Diaz v New York City Health & Hosps. Corp. (2024 NY Slip Op 00224)

Diaz v New York City Health & Hosps. Corp.

2024 NY Slip Op 00224

Decided on January 18, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 18, 2024

Before: Kern, J.P., Friedman, González, Shulman, JJ. 

Index No. 27388/17 Appeal No. 1481 Case No. 2021-03855 

[*1]Sally Diaz, as Mother and Natural Guardian of M.C., an Infant, et al., Plaintiffs-Respondents,
v
New York City Health and Hospitals Corporation, et al., Defendants-Appellants, Dr. Norman Angell et al, Defendants.

Sylvia O. Hinds-Radix, Corporation Counsel, New York (Tahirih M. Sadrieh of counsel), for appellants.

Order, Supreme Court, Bronx County (George J. Silver, J.), entered October 7, 2021, which denied defendants-appellants' motion for summary judgment dismissing the complaint against them, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.
Defendants' motion for summary judgment should have been granted. Initially, defendants met their prima facie burden by demonstrating that any alleged malpractice did not contribute to the mother's injuries. Defendants' expert noted that the mother's labor period was approximately 12 hours, well within acceptable medical parameters, and "speaks to a rather smooth descent and dilation and indicates no trauma which could in any way be suggestive or causative of a diastasis of symphysis pubis." The expert further affirmed that the infant was delivered within half an hour of full dilation, without issues, that the birth was atraumatic and that the infant's weight "would not have resulted in undue trauma to the mother's pelvic structures." According to the expert, diastasis of the symphysis pubis either occurs spontaneously, or possibly as a function of trauma, such as a fracture, which did not happen here, and is not uncommon.
In opposition, plaintiffs failed to raise an issue of fact sufficient to defeat defendants' motion for summary judgment. Plaintiffs' expert did not dispute defendants' expert's opinion except to add that symphysis pubis diastasis can also occur from something known as the McRobert's maneuver, employed during delivery here, "if there is prolonged placement of the patient's legs in hyper flexed position." Plaintiffs' expert asserted that the nurse midwife deviated from accepted practice in not instructing the mother to relax between contractions and that the mother's pubic symphysis diastasis was the result of "excessive pressure" or "prolonged flexion of her legs" during labor.
Plaintiffs' expert failed to raise a triable issue of fact as the expert failed to opine as to what constitutes a "prolonged" period for legs to be in hyper flexed position. Indeed, in her reply affirmation, defendants' expert opined that the McRoberts maneuver can, and has, been used for upwards of two hours without causing any diastasis of the symphysis pubis. Additionally, plaintiffs' expert failed to raise a triable issue of fact as the expert opines, without further explanation, that the mother experienced trauma because she developed pubic symphysis diastasis. However, plaintiffs' expert does not deny that the condition is not uncommon and can occur spontaneously. Finally, plaintiffs' expert does not point to facts in the record that suggest excessive pressure was used or that the mother was not allowed to relax her legs between contractions. Therefore, plaintiffs' expert's testimony cannot be used to raise a triable issue of fact as it is speculative, conclusory and not based on facts in the record (see Park v Kovachevich, 116 AD3d 182, [*2]192 [1st Dept 2014], lv denied 23 NY3d 906 [2014] [opinion evidence must be based on facts in the record]; Kaplan v Karpfen, 57 AD3d 409, 409-410 [1st Dept 2008], lv denied 12 NY3d 716 [2009] [the plaintiff's conclusory and speculative expert opinions were insufficient to raise a triable issue of fact]).
Additionally, defendants established their prima facie entitlement to summary judgment on the ground that their treatment of M.C. did not depart from the accepted standard of care or proximately cause her injuries. Defendants' expert explained that hip dysplasia is a catch-all term for improper growth and development of the hip joint, unrelated to the manner of delivery, which can sometimes be detected at birth, but other times does not manifest until several months have passed. Notably, in this case, M.C.'s physical examination upon birth was normal, with "hips stable" and "full range of motion to all extremities and no deformity." Relying on the medical records, the expert opined that M.C. suffered from a relatively mild case of developmental dysplasia, which does not appear until months after birth. With respect to M.C.'s neck torticollis, the expert opined that this condition is also not a function of the manner of delivery, but from the baby's placement in the womb, and "can be discovered in weeks to months following delivery as the child physically matures and starts lifting their head. Again, on physical examination, it was noted that M.C.'s clavicles were intact with no mass or deformity.
In opposition, plaintiffs failed to raise an issue of fact sufficient to defeat defendants' summary judgment motion. Plaintiffs' expert asserts that defendants departed from accepted practice in failing to "timely diagnose, manage and treat" M.C., resulting in the need for more "extensive treatment." Yet, in the expert's two-paragraph opinion/discussion section, the expert does not address the failure to diagnose the infant's conditions. Rather, the expert asserts that neck torticollis can also result from "forceful stretching of the muscles of the fetal neck" during delivery. However, nothing in this record suggests that force was applied during the delivery of M.C. Without further explanation, the expert then opines, in conclusory fashion, that "[m]uscle shortening and scarring of muscle, with a nodule in those muscles . . . is proof of the traumatic cause of the torticollis seen in this case." Moreover, the expert did not address M.C.'s hip dysplasia at all. Thus, plaintiffs' expert opinion was also insufficient to raise a triable issue of fact as to whether the alleged medical malpractice contributed to M.C.'s injuries (see Park at 192; Kaplan at 409-410).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 18, 2024